## CANNADY *v.* YAWN *et al.*

No. 13949.   January 13, 1942.

*John L. Youngblood*, for plaintiff.
*Herbert W. Wilson* and *E. O. Blalock*, for defendants.

Jenkins, Justice. 1. Except as related to controversies between the father and the mother of a child, it is the rule that until majority the child shall remain under the control of the father, unless the parental power shall be lost, which, among other ways, may be done by voluntary contract releasing the right to a third person. Code, § 74-108 (1). The judge, before whom this habeas-corpus proceeding was brought by the father for the custody of his child nine years of age, against the child's grandparents, who were the parents of the child's deceased mother, was authorized to find that upon the death of the mother three years previously, and at the mother's request, the child was surrendered to the grandparents with the understanding that they would be entitled to keep the child so long as her grandmother lived, provided that the grandparents moved from their then residence to a different locality near a certain school. The evidence is in conflict as to whether the father, at the time of such surrender of the child, added the further condition, "or until such time as I can provide a home for her." The father testified as to this latter condition. The two grandparents, denying the same, were corroborated by independent testimony. The evidence was undisputed that the grandparents disposed of their home at a financial loss, and moved with the child into the agreed new location.

2. There was some testimony by the father going to sustain his contention that in June, 1941, before the bringing of the habeas-

corpus proceeding in September, 1941, and some two or three years after the surrender of the child to the grandparents, the grandparents relinquished back to the father their claim upon the child; the father testifying that when he then carried the child from Waycross, Georgia, to his home in Virginia, "We had the understanding that I would keep the child, and they would be allowed to have her at Christmas time and summer vacations." There was testimony, however, from the father himself which might indicate that such an "understanding" was merely an assumption on the part of the father, which had not been agreed to by the grandparents, both of whom denied that they had thus relinquished their right to the custody of the child. The father testified: "I did not ask their permission to take the child back; it is my child. I went to their home, and they packed her clothes, and I left." The father testified that when the grandmother came to Virginia and took the child back, "I had an understanding with [the grandmother] and the child that she was to be back in Portsmouth, Virginia, August 16th, to go to school up there permanently, as that was her home." The basis of such an understanding, however, appears from the father's own testimony to be that on the night before they left Virginia, he spoke to the child in the grandmother's presence, telling her: "You have four weeks in Waycross [the grandparents' home]. I will expect you back August 16th;" and that the child replied: "I will be back up here on August 16th." With reference to this portion of the father's testimony, the grandmother testified: "I just brought her back with no understanding with me and him about it. He did not say a word to me about bringing her back or not. He thought the child was satisfied. At the time I left, I knew he understood, from a conversation with [the child], that she would be back on August 16th. Those were the final instructions I heard." As to this same portion of his testimony, the grandmother further testified: "I did not raise any objection to it. I did not say anything. I knew there was no use, no use in arguing with him." From this testimony it appears that what the father sets forth as an understanding between himself and the grandparents did not amount to an agreement between himself and them, relinquishing their claim to the child, but amounted only to an assumption on his part by reason of his own conduct in taking the child back to Virginia in accordance with

what he construed to be his rights, based upon what he told the child in the presence of one of the defendants, but which this defendant said she declined to discuss, as she saw no reason to enter upon an argument. Just as the contract by which the father relinquished his rights to the grandparents must be clearly and unmistakably shown, so with equal clearness and certainty it must be made to appear that the grandparents surrendered the rights thus acquired. The evidence was such as did not require a finding by the judge that the grandparents surrendered the custody, which the evidence authorized a finding had been given; and since it appears that all of the parties to this litigation are of high personal character and respected citizens, the judgment awarding the child to the grandparents, which was in accordance with the wishes of the child, with rights of visit as stated in the order, will not be disturbed.        *Judgment affirmed.   All the Justices concur.*